**BOWLES, Price Administrator, Office of Price Administration, v. BAYUK CIGARS, Inc.**

No. 4413.

District Court, E. D. Pennsylvania.

Feb. 23, 1945.

Walter N. Moldawer, of Philadelphia, Pa., Jacob N. Geffen, of New York City, Charles Rembar, of Washington, D. C., and George Kunkel, of Harrisburg, Pa., for O. P. A.

Daniel Lowenthal and Jerome J. Rothschild (of Fox, Rothschild, O'Brien & Frankel), all of Philadelphia, Pa., for defendant.

BARD, District Judge.

This is an action for an injunction brought by Chester Bowles, Price Administrator, Office of Price Administration, to restrain violations of Section 4 (a) of the Emergency Price Control Act of 1942, as amended 56 Stat. 23, 765; 57 Stat. 566, 50 U.S.C.A.Appendix §§ 901 et seq., § 961 et seq., and of Maximum Price Regulation No. 494 (9 F.R. 14725) issued under the Act.

Jurisdiction of this action is conferred upon this court by Section 205(c) of the Act, 56 Stat. 33, as amended, 50 U.S.C.A. Appendix § 925(c).

I make the following special findings of fact:

1. Defendant Bayuk Cigars, Inc., is a corporation organized and existing by virtue of the laws of the State of Maryland.

2. Defendant is engaged in the business of buying and packing tobacco and manufacturing cigars.

3. Defendant has offices at Ninth Street and Columbia Avenue, Philadelphia, Pennsylvania.

4. Defendant purchases tobacco from farmers or growers in Lancaster County, Pennsylvania, and for that purpose employs approximately 72 buyers, and maintains and operates approximately 20 warehouses and 5 receiving stations in that county.

5. Pursuant to the Emergency Price Control Act of 1942, the Price Administrator, on December 16, 1944, issued Revised Maximum Price Regulation No. 494 (9 F.R. 14725) effective that date and has continued in effect at all times since that date except as amended on January 29, effective on January 30, 1945 (10 F.R. 1334). This regulation establishes maximum prices for sales and purchases of domestic cigar filler and binder tobacco, requires the keeping of records, and prohibits evasive practices.

6. The type of tobacco grown in Lancaster County, Pennsylvania, is referred to in Regulation 474 as Type 41, Pennsylvania seedleaf wrappers and farm fillers, for which the ceiling price is established for growers under the Regulations at 21 and 7 cents per pound respectively plus drayage.

7. On or about January 31, 1945, and at various times thereafter and until the date hereof, the defendant corporation, in the course of its business, received from divers growers in Lancaster County, Pennsylvania, domestic cigar filler tobacco known as Type 41, Pennsylvania seedleaf tobacco of two grades designated in said Regulation as Wrapper B's Table Sized and Farm Fillers.

8. That at the time of the delivery of the tobacco by the growers and the receipt thereof by defendant corporation, the defendant corporation made advance payment on account of the purchase price of the tobacco to each of these growers to the extent of approximately 95% of the maximum prices provided by Regulation 494 for sales by growers.

9. That at no time did the defendant corporation, its officers, servants, agents or employees state or represent to such growers that the monies were merely loaned to them, or that the tobacco delivered was held as collateral security for any loan, or that interest was to be paid on any loan, nor was any mention made of storage charges or insurance charges, or that the tobacco delivered would be custom-packed for the account and risk of the growers and held by defendant pending further instructions.

10. That the defendant corporation proceeded to pack the tobacco so delivered by the growers upon the receipt thereof.

11. That defendant tobacco manufacturer evaded and attempted to evade the price limitations provisions of Regulation 494 by receiving and accepting delivery of the tobacco and packing same, and agreeing to pay the growers subsequently as the purchase price thereof, the maximum price provided by the Regulation for packed tobacco, less the cost of packing and less the advance payments theretofore made by defendant corporation on account of the purchase price.

12. That the defendant corporation, by its officers, agents, servants and employees, in the course of its business received and agreed, offered, solicited and attempted to purchase and receive tobacco from growers, and the growers delivered and agreed to deliver the tobacco to defendant corporation at the maximum prices provided by the Regulation for sales by growers in effect at the time of delivery, with the provision that such sales prices would be adjusted upward after delivery of the tobacco in the event that the Office of Price Administration should allow the defendant corporation to pay to the growers, packers' prices less the cost of packing in accordance with a protest filed by defendant with the Office of Price Administration.

## Discussion.

The defendant corporation is a large buyer and packer of tobacco. The Price Administrator in accordance with the Emergency Price Control Act of 1942 issued a regulation establishing a maximum price of 21 cents a pound for wrappers and 7 cents a pound for fillers of the type of the tobacco grown in Lancaster County and other counties of Pennsylvania.

There appears to be a shortage of tobacco causing great competition among the buyers for this year's tobacco crop in Lancaster County. Various methods have been adopted by buyers which have the effect of indirectly circumventing the regulations promulgated by the Price Administrator without the appearance of a direct violation of the price regulations.

In the instant case the defendant instructed its buyers to attempt to purchase the grower's tobacco at the ceiling prices of 21 and 7; that if the farmer did not wish to sell for this price he was to tell the farmer to send his tobacco to defendant's warehouse and the farmer would get the highest legal price; that defendant had pending with the Office of Price Administration a protest for the purpose of securing for the grower the packer's price, a price higher than the grower's price.

Pursuant to these instructions defendant's buyers offered to purchase the tobacco for the grower's ceiling price and if the grower refused to sell at this price the buyers told the growers that if defendant's protest with the Office of Price Administration was sustained the grower would get more money. As a result of this proceeding a number of growers hauled their tobacco to defendant's warehouse without a formal sales contract and took the chance of obtaining more money than the grower's ceiling price at a later date.

In one case the buyer made an offer of 21 and 7 but stated that defendant would not make final settlement. Instead the defendant would pay 95% of the grower's price at the time of delivery and in the event that the price would be raised the defendant would pay such additional price so that the grower would receive as much for the crop as would be legally possible.

In another instance when the grower refused to sell at the ceiling price, defendant's buyer told him to deliver his tobacco to defendant's warehouse and receive at least 90% of the ceiling price with the promise that if the ceiling price would be changed the grower would get the benefit of it at a later settlement. Upon delivery of the tobacco 95% of the grower's ceiling price was paid.

Defendant contends that it did not violate the price regulations promulgated by the Price Administrator. Defendant contends there is nothing in the regulations which prohibits the farmer from delivering his tobacco to the defendant for packing, and after the tobacco is packed, which prohibits the defendant from purchasing the packed tobacco from the grower at the packer's price, less the cost of packing.

The Price Administrator through his legal counsel on January 8, 1945, issued an interpretation contrary to the defendant's view. This interpretation was issued at least three weeks before the regulations permitted the purchase of tobacco. On February 2, 1945, defendant filed a protest with the Price Administrator challenging the correctness of this interpretation.

Defendant contends that it at no time intended to violate the price regulations but merely represented to the farmer that if its protest would be sustained and it would be allowed to pay the packer's price, it would then pay this additional amount over and above the 21 and 7 grower's ceiling price.

I do not think that defendant's view can be sustained. Defendant has received tobacco from growers on a promise of 21 and 7 cents plus a promise of an additional sum upon the happening of a contingency. I hold this extra consideration to be a violation of Section 13 of Regulation 494.

Whether or not the verbal arrangements under which the farmers hauled their tobacco to the defendant's warehouse was a sale of the tobacco the practical effect thereof was that the grower hoped to have a price adjustment upward after delivery. This of course was in violation of Section 9 of Regulation 494.

To permit defendant to continue with the practice it has engaged in would give it an unfair advantage over buyers who offer 21 and 7 cents a pound and no more. For these reasons I think an injunction should issue.

### Conclusions of Law.

1. This court has jurisdiction of this action brought by the Administrator of the Office of Price Administration pursuant to Section 205(a) of the Emergency Price Control Act of 1942 as amended, to enjoin acts and practices of the defendant constituting violations of Section 4(a) of the Act, and of Revised Maximum Price Regulation No. 494, "Domestic Cigar Filler and Binder Tobaccos" (9 F.R. 14725) as amended, this Regulation being effective in accordance with the provisions of the Act.

2. This court has jurisdiction over the defendant.

3. At various times since January 31, 1945, and until the date of these proceedings, the defendant has engaged in acts and practices which constitute violations of Section 4(a) of the Emergency Price Control Act of 1942 as amended,

(a) By receiving, and agreeing, offering, soliciting and attempting to buy and receive in the course of its business, domestic cigar filler tobacco for which max-

imum prices are established by Regulation 494, at prices in excess of the maximum prices permitted by this Regulation, thereby violating Section 13 (a) thereof; and

(b) By evading and attempting to evade the price limitations provisions of the Regulation in connection with an offer, solicitation, agreement, sale, delivery, purchase and receipt of and relating to domestic cigar filler tobacco for which maximum prices are established by the Regulation, thereby violating Section 13(b) of the Regulation; and

(c) By receiving and agreeing, offering, soliciting and attempting to buy and receive in the course of its business domestic cigar filler tobacco at prices to be adjusted upward and increased above the maximum price allowed growers in effect at the time of delivery, in accordance with action taken by the Office of Price Administration after delivery.

4. An injunction should issue enjoining the defendant corporation, its officers, directors, agents, servants, employees and all persons in active concert or participation with any of them, jointly and severally, from:

(a) Directly or indirectly buying, receiving, or agreeing, offering, soliciting or attempting to buy or receive unpacked Pennsylvania seedleaf, Type 41, domestic cigar filler and binder tobacco at prices in excess of the maximum prices permitted by section 3 (a) of Revised Maximum Price Regulation No. 494, "Domestic Cigar Filler and Binder Tobacco" (9 F.R. 14725), as amended, pursuant to the Emergency Price Control Act of 1942 as amended, establishing maximum prices for commodities; and

(b) Directly or indirectly evading or attempting to evade the price limitations and other provisions prescribed by Revised Maximum Price Regulation No. 494, as amended, in connection with any offer, solicitation, agreement, sale, delivery, purchase or receipt of, or relating to unpacked Pennsylvania seedleaf, Type 41, domestic cigar filler or binder tobacco for which maximum prices are established by Sec. 3 (a) of this Regulation, contrary to the provisions of this Regulation, as amended; and

(c) Directly or indirectly buying or receiving, or agreeing, offering, soliciting or attempting to buy or receive unpacked Pennsylvania seedleaf, Type 41, domestic cigar filler and binder tobacco at prices to be adjusted upward and increased above the maximum price allowed growers in effect at the time of delivery, in accordance with action to be taken by the Office of Price Administration after delivery, contrary to the provisions of Revised Maximum Price Regulation No. 494, Sec. 3(a) as amended.